[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————————

No. 21-11582

Non-Argument Calendar

————————————————

MARIO PONCE RODRIGUEZ,

Petitioner-Appellant,

*versus*

UNITED STATES OF AMERICA,

Respondent-Appellee.

————————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:15-cv-23835-DMM

————————————————

Before NEWSOM, GRANT, and ANDERSON, Circuit Judges.

PER CURIAM:

Mario Ponce Rodriguez,[1] appeals the district court's denial of his 28 U.S.C. § 2255 motion to vacate his sentence. We granted Ponce a certificate of appealability ("COA") on whether the district court erred by rejecting Ponce's claim that his trial counsel performed ineffectively without holding an evidentiary hearing.

## I.

In October 2015, Ponce, represented by counsel, filed a motion to vacate his conviction and sentence under 28 U.S.C. § 2255. In relevant part, he asserted that his trial counsel, Diaz, was ineffective because he had a conflict of interest.[2] He contended that the conflict resulted in ineffective representation, specifically, Diaz's failure to "fully address and investigate ongoing witness collusion," adequately discuss the consequences of Ponce testifying at the trial or prepare Ponce for testifying. Ponce filed an addendum to his § 2255 where he explained that Diaz "was burdened by a direct, personal conflict of interest arising from the representation of another

---

[1] According to the parties, the appellant goes by "Ponce," which this opinion adopts for consistency.

[2] On appeal, this Court granted a certificate of appealability ("COA ") only on one issue: "Whether the district court erred by rejecting Ponce's Claim 1, that his trial counsel performed ineffectively, without holding an evidentiary hearing?" Therefore, we do not address the other issues raised by Ponce.

defendant in a matter analogous to the matter prosecuted in the instant case." Specifically, he asserted that Diaz was the subject of a criminal investigation in another district, which created a conflict of interest that Diaz failed to disclose and impacted his representation of Ponce.

Ponce later amended and consolidated his § 2255 motion, adding new facts and supporting documentation that he discovered during the pendency of his § 2255 motion. In relevant part, he contended that the federal criminal investigation into Diaz created an actual conflict of interest that should have been disclosed to Ponce and that caused Diaz to provide ineffective assistance of counsel. Additionally, he claimed that Diaz provided ineffective assistance of counsel by not adequately informing Ponce about the government's plea offer before it expired; failing to prepare Ponce to testify at his trial or otherwise discussing the consequences of Ponce testifying at trial; and failing to use favorable *Brady*[3] evidence and cross-examine and impeach government witnesses.

Subsequently, the magistrate judge issued a report and recommendation ("R&R") recommending that Ponce's § 2255 motion be denied. As to Diaz's conflict of interest, the R&R stated that Ponce did not establish an actual conflict of interest and was not entitled to relief because the Southern District of New York was investigating Diaz, but Ponce was prosecuted in the Southern

---

[3] *Brady v. Maryland*, 373 U.S. 83 (1963).

District of Florida, so an actual conflict did not exist. The magistrate judge highlighted that this issue was not one of first impression, as the government had asked numerous courts in the Southern District of Florida to hold *McLain*[4] hearings based on Diaz's investigation by the Southern District of New York, all of which denied the government's motions and found that an investigation in another district did not create an actual conflict that required a *McLain* hearing.

Addressing Ponce's allegations that Diaz failed to call specific witnesses and present specific evidence demonstrating collusion among government witnesses, the magistrate judge noted that Diaz did actually pursue that same theory at Ponce's trial, and found Diaz's decisions about which witnesses to call and what evidence to present were "the epitome of a strategic decision," and Ponce failed to establish deficient performance by Diaz. As to Ponce's claims that Diaz failed to prepare him to testify, the R&R indicated that Ponce's testimony did not indicate that he was unprepared to testify, and on the contrary, his responses to Diaz's questions were clear and consistent. The magistrate judge also stated that Diaz's questions were clear and organized, and Diaz elicited testimony from Ponce that was favorable to their theory of the case.

Turning to Ponce's claim that Diaz did not communicate the government's plea offer to him before it expired, the magistrate

---

[4] *United States v. McLain*, 823 F.3d 1457 (11th Cir. 1987).

judge concluded that Ponce could not establish prejudice because the record established that he had reviewed the plea offer and rejected it under oath and he had not established that he would have accepted the offer. Regarding the evidentiary hearing, the magistrate judge stated that he had reviewed the parties' pleadings and briefs and found that Ponce had not established a need for an evidentiary hearing because he could not show that such a hearing would demonstrate that he was entitled to relief.

Ponce objected to the R&R. The district court overruled Ponce's objections to the R&R, adopted the R&R as supplemented by its own findings, and denied Ponce's § 2255 motion and a COA. The district court found that, as to Ponce's ineffective assistance of counsel claim, a conflict did not exist based on the Southern District of New York's investigation into Diaz based on *McLain* and the decisions of other district courts. Likewise, it found that Ponce was aware of the government's plea offer and decided to go to trial instead. Generally, the court found that "Diaz zealously advocated" on Ponce's behalf, he extensively, effectively, and vigorously cross-examined witnesses, and Ponce's testimony was not ill-prepared, but rather, was incredible. As to the evidentiary hearing, the court stated that the record of the case conclusively demonstrated that Ponce was not entitled to relief and an evidentiary hearing was not necessary.

## II.

When reviewing the district court's denial of a motion to vacate, we review questions of law *de novo* and findings of fact for

clear error. *Thomas v. United States*, 572 F.3d 1300, 1303 (11th Cir. 2009). "We review the district court's denial of an evidentiary hearing in a § 2255 proceeding for abuse of discretion." *Winthrop-Redin v. United States*, 767 F.3d 1210, 1215 (11th Cir. 2014). "The scope of our review of an unsuccessful § 2255 motion is limited to the issues enumerated in the COA." *McKay v. United States*, 657 F.3d 1190, 1195 (11th Cir. 2011).

A district court is required to hold an evidentiary hearing on a motion to vacate "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *Anderson v. United States*, 948 F.2d 704, 706 (11th Cir. 1991). Thus, if a movant "alleges facts that, if true, would entitle him to relief, then the district court should order an evidentiary hearing." *Aron v. United States*, 291 F.3d 708, 714-15 (11th Cir. 2002) (quotation marks omitted). However, such a hearing is not required where a movant's claims are patently frivolous, based upon unsupported generalizations, or affirmatively contradicted by the record. *Id.*

A petitioner alleging that he received ineffective assistance of counsel in violation of the Sixth Amendment must establish two elements. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "First, the defendant must show that counsel's performance was deficient." *Id.* Review of counsel's actions is "highly deferential" and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Additionally, "every effort [must] be made to eliminate

the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* "The widespread use of the tactic of attacking trial counsel by showing what 'might have been' proves that nothing is clearer than hindsight-except perhaps the rule that we will not judge trial counsel's performance through hindsight." *Waters v. Thomas*, 46 F.3d 1506, 1514 (11th Cir. 1995). Thus, the petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

"Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* Prejudice occurs when there is a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. at 112.

A. Conflict

To obtain relief on a claim of ineffective assistance of counsel based on conflict of interest, a defendant must show first, that his attorney had an actual conflict of interest, and second, that the conflict adversely affected counsel's performance. *Pegg v. United States*, 253 F.3d 1274, 1277 (11th Cir. 2001) (citing *Freund v. Butterworth*, 165 F.3d 839, 858 (11th Cir. 1999)). In order to establish a violation of the Sixth Amendment, a defendant "must demonstrate that an actual conflict of interest adversely affected his lawyer's

performance." *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1981). A § 2255 petitioner must show "'inconsistent interests and must demonstrate that the attorney made a choice between possible alternative courses of action.'" *McConico v. Alabama*, 919 F.2d 1543, 1546 (11th Cir. 1990) (quoting *Smith v. White*, 815 F.2d 1401, 1404 (11th Cir.1987)). "To prove adverse effect, a defendant needs to demonstrate: (a) that the defense attorney could have pursued a plausible alternative strategy, (b) that this alternative strategy was reasonable, and (c) that the alternative strategy was not followed because it conflicted with the attorney's external loyalties." *Reynolds v. Chapman*, 253 F.3d 1337, 1343 (11th Cir. 2001). In *United States v. McLain*, 823 F.2d 1457 (11th Cir. 1987), unbeknownst to the trial court or the defendant, defense counsel was under criminal investigation by the same United States Attorney's office that was trying the defendant. The court held the conflict created ineffective assistance of counsel but also stated that the defendant could have waived the conflict if he had known about it prior to trial. *Id.* at 1464 & n. 11.

Here, the district court properly determined that Ponce failed to establish an actual conflict of interest because Diaz was under investigation by the Government in a different district. *See McLain*, 823 F.2d at 1464; *Reynolds*, 253 F.3d at 1342. Although Ponce argues that Diaz was being investigated for his role in "an analogous case," Ponce did not explain how that investigation impacted this case, in a different district. Therefore, he has not shown an actual conflict of interest that adversely affected his case. Ponce is not entitled to a hearing on this claim.

### B. Plea Agreement

Ponce argues that Diaz provided ineffective assistance of counsel when he did not present Ponce with the plea agreement during its pendency. He further argues that he would have accepted the plea agreement had he known of it when it was viable. However, Ponce cannot demonstrate prejudice under the *Strickland* standard. At the April 5, 2012, Colloquy on the plea offer, Ponce stated that he wished to go to trial and rejected the plea offer several times. Further, at that same hearing, Diaz used the present tense to describe the plea offer such that if Ponce were only learning of the plea agreement at that time, and its favorable sentencing recommendations, Ponce would have thought that the plea offer was still open and yet he still rejected it. Finally, if indeed Ponce only learned about the plea agreement on April 5,[5] and had wanted to accept it as he now asserts, he would have raised this issue with counsel after trial in his motion for a new trial, his direct appeal, or in his initial § 2255 petition, but he did not. Because he cannot thus show prejudice, he cannot show that he is entitled to a hearing on this claim.

### C. Trial Testimony

Next, Ponce argues that Diaz provided ineffective assistance of counsel when he failed to prepare Ponce for testifying at trial. Like his plea offer claim, this claim also fails under *Strickland*.

---

[5] To the extent that Ponce now argues that he only learned in 2019 of the plea offer, that claim is belied by his testimony at the April 5 Colloquy.

Between the time Ponce arrived at the local prison and trial, Diaz visited Ponce 15 times.  His associate, a Honduran attorney, visited Ponce for two hours the day before the Ponce's testimony.  At trial Diaz questioned Ponce over two days and his questions, and Ponce's answers, were coherent and well-organized.  For instance, Diaz asked Ponce extensively and knowledgeably about his business holdings and had photographic exhibits of those holdings to support his line of questioning.  Ponce's answers do not reflect any lack of familiarity with what was expected of him or surprise.  Similarly, Diaz's questioning of Ponce after the Government's cross-examination was thorough and addressed the Government's questioning.  There simply was nothing in Ponce's testimony that suggests that he was not prepared.  Because there is no evidence that evens suggests "that that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," Ponce was not entitled to an evidentiary hearing on this issue.[6] *Strickland*, 466 U.S. at 687.

### D. Impeachment Evidence

Ponce argues that Diaz's impeachment of the Government's witnesses was deficient and cites a number of pieces of evidence that he argues Diaz should have used to undermine the credibility of the Government's witnesses.  We agree with the magistrate judge that, at the trial, Diaz did actually pursue this very strategy,

---

[6] To the extent that the district court commented that Ponce's testimony did not assist him, that statement appears to have been based on credibility, not content.

and was not deficient in that regard.  Diaz began his defense of Ponce with statements in his opening argument about the Government's witnesses' lack of credibility, questioned the witnesses about what they would be receiving for their testimony, and reiterated, in depth, their credibility issues in closing arguments.  Furthermore, we rejected as cumulative similar evidence that Ponce raised in his motion for  a new trial, including his new argument that the witnesses colluded.  *United States v. Rodriguez*, 703 F. App'x 784, 786 (11th Cir. 2017).  Diaz exerted extensive energy and time to attacking the Government's witnesses' credibility.  "The mere fact that other witnesses might have been available or that other testimony might have been elicited from those who testified is not a sufficient ground to prove ineffectiveness of counsel." *Foster v. Dugger*, 823 F.2d 402, 406 (11th Cir. 1987).  We cannot say that his failure to use several other pieces of evidence rises to the level of ineffective assistance.

### E. Other Trial Errors

Finally, Ponce points to several other trial errors that he asserts Diaz made.  Specifically, he points to several witnesses that he argues Diaz should have called and argues Diaz should have introduced Ponce's passport or INS records of Ponce's travels to the United States.  However some of the identified omissions—like failing to call ex-DEA agent Michael Levine, who would have testified that payment for drugs in dollars did not establish that the drugs were being shipped to the United States—made perfect strategic sense because the defense strategy was that Ponce was not

involved in the drug trade.  Other evidence, like Wayne Morris's testimony that the helicopter Ponce used did not test positive for cocaine, was brought up in another way and thus would be cumulative.  Again, like the impeachment testimony, we cannot fault Diaz for not calling some available witnesses or not introducing certain evidence when overall, he provided competent counsel. These omissions were not "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

Because Ponce has failed to show that his claims are not claims that are patently frivolous, based upon unsupported generalizations, or affirmatively contradicted by the record, the district court did not err when it failed to hold an evidentiary hearing.

AFFIRMED.